```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-30-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BRENNAN CENTER FOR JUSTICE AT          :
NEW YORK UNIVERSITY SCHOOL OF LAW,     :     09 Civ. 8756 (VM)
                                       :
                    Plaintiff,         :
                                       :     **DECISION AND ORDER**
     - against -                       :
                                       :
UNITED STATES DEPARTMENT               :
OF JUSTICE, et al.,                    :
                                       :
                    Defendants.        :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff the Brennan Center for Justice at New York University School of Law (the "Brennan Center") filed this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking, among other things, to compel disclosure of certain documents by defendants United States Department of Justice ("DOJ"), United States Department of Health and Human Services ("HHS") and United States Agency for International Development ("USAID") (collectively, the "Government").

The Brennan Center now moves for partial summary judgment with respect to three specific documents created by DOJ's Office of Legal Counsel (the "OLC Memoranda"), on the grounds that the Government may not shield them from disclosure based on the FOIA exemption set forth in 5 U.S.C. § 552(b)(5) ("Exemption 5"). That provision

1

pertains to several forms of privilege, including deliberative process and attorney-client privileges. The Government cross-moves for summary judgment on the same question of law.

For the reasons discussed below, Brennan Center's motion is GRANTED, and the Government's motion is DENIED.

## I.   BACKGROUND[1]

This action arises out of FOIA requests ("FOIA Requests") submitted by the Brennan Center in 2005 to HHS, DOJ's Office of Legal Counsel ("OLC"), and USAID. The FOIA Requests sought copies of any and all documents containing guidance provided by OLC to HHS or USAID concerning enforcement of provisions in two statutes, the United States Leadership Against HIV/AIDS, Tuberculosis, Malaria Act, 22 U.S.C. §§ 7601, et seq. (2003) ("Leadership Act") and the Trafficking Victims Protection Reauthorization Act, 22 U.S.C. §§ 7110, et seq. (2003) ("TVPRA"). The provisions in question require organizations that receive United States government funds for HIV/AIDS and anti-

---

[1] The factual summary below is derived from the following documents and any exhibits attached thereto: Plaintiff's Statement of Material Undisputed Facts Pursuant to Local Rule 56.1, dated January 28, 2011 ("Pl. Rule 56.1 Statement"); the Declaration of Elizabeth M. Virga in Support of Plaintiff's Motion for Summary Judgment ("Virga Decl."); and the Declaration of Paul P. Colborn, dated March 11, 2011 and submitted in support of the Government's cross-motion and its opposition to the Brennan Center's motion.

trafficking work to adopt an explicit and affirmative policy opposing prostitution (the "Pledge Requirement").[2] In response to the FOIA Requests, HHS stated that it had identified at least 231 responsive pages but would withhold the vast majority of those pages based on Exemption 5; OLC stated that it had located one responsive document, which it would withhold pursuant to Exemption 5; and USAID stated only that all responsive documents would be withheld based upon attorney-client privilege.

The Brennan Center commenced this action on October 15, 2009, seeking, among other things, a declaration from the Court that the Government had improperly refused to disclose documents responsive to the FOIA Requests, as well as an order requiring the Government to make the withheld

_____

[2] By way of background, the Pledge Requirement has been the subject of almost six years of intense litigation in a separate action before this Court, initiated by a variety of nongovernmental organizations, including the Brennan Center, that believe the Pledge Requirement will impede efforts to combat HIV/AIDS internationally, and argue that the Pledge Requirement violates the First Amendment rights of the U.S.-based organizations against whom the Government had sought to enforce it. By Decision and Order dated May 8, 2006, this Court first found that the recipient organizations had demonstrated a likelihood of success on the merits of their First Amendment claims, see Alliance for Open Soc. Int'l v. U.S. Agency for Int'l Dev., 430 F. Supp. 2d 222 (S.D.N.Y. 2006), and the Second Circuit recently affirmed that determination. See Alliance for Open Soc. Int'l v. U.S. Agency for Int'l Dev., --- F.3d ---, 2011 WL 2623477 (2d Cir. July 6, 2011).

documents ("Withheld Documents") available.   On January 15, 2010, the Government provided the Brennan Center with a draft index, pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) ("Vaughn Index"), describing the nature of each Withheld Document and the basis for any purported exemption from FOIA disclosure.   Following an in camera review of the Withheld Documents and ex parte discussion with the Government, the Court directed the Government to produce to the Brennan Center redacted versions of the Withheld Documents which disclosed certain uncontroversial portions of the texts.   However, the Court did not at that time address the merits of any of the exemptions asserted by the Government with respect to those portions of the Withheld Documents that remained redacted.

The Brennan Center now challenges the propriety of exemption with respect to three Withheld Documents. Specifically, Brennan Center seeks disclosure of: (1) a one-page memorandum provided by OLC to HHS and USAID on or about February 17, 2004 (the "February Memo") concerning OLC's "tentative" views on the constitutionality of the Pledge Requirement; and (2) two separate drafts, dated July 2 and July 29, 2004, of a formal OLC opinion that apparently was never finalized and which also addressed the

4

constitutionality of the Pledge Requirement (the "July 2 Memo" and the "July 29 Memo," respectively, and together, the "July Memoranda"). The Government has released additional limited portions of the July Memoranda in connection with its instant cross-motion. Otherwise, the Government argues that the balance of the OLC Memoranda is protected from disclosure pursuant to Exemption 5's deliberative process privilege and the attorney-client privilege. The Brennan Center counters that the Government has waived any such privileges by "expressly . . . adopt[ing] or incorporat[ing] by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975)).

## II.   DISCUSSION

### A.   LEGAL STANDARD

#### 1.   Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if, on the record before it, there exists "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Alabama v. North Carolina,

5

130 S. Ct. 2295, 2308 (2010).  In determining whether disputed issues of material fact exist, a court must view the evidence in the light most favorable the non-moving party, and draw all reasonable inferences in its favor. See, e.g., Shapiro v. New York Univ., 640 F. Supp. 2d 411, 418 (S.D.N.Y. 2009) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

    2.   FOIA and Exemption 5

FOIA was enacted "to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed."  La Raza, 411 F.3d at 355 (internal quotation marks omitted).  The statute "strongly favors a policy of disclosure, and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in [FOIA]."  Id. (citations omitted); see also 5 U.S.C. § 552(a)(3), (b)(1)-(9).  Consistent with FOIA's purposes, these statutory exemptions must be construed narrowly, with all doubts resolved in favor of disclosure.  See La Raza at 355-56 (collecting cases); Wood v. FBI, 432 F.3d 78, 83 (2d Cir. 2005).

6

FOIA requests generally are resolved on summary judgment, with the government bearing the burden of establishing that any claimed exemption applies. See Wood 432 F.3d at 83; Bronx Defenders v. U.S. Dep't of Homeland Sec., No. 04 Civ. 8576, 2005 WL 3462725, *2 (S.D.N.Y. Dec. 19, 2005).

Pursuant to Exemption 5, an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have interpreted Exemption 5 to encompass traditional common-law privileges against disclosure, including the work-product doctrine, and executive, deliberative process and attorney-client privileges." La Raza, 411 F.3d at 356. Exemption 5 also protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB, 421 U.S. at 150 (internal quotation marks omitted). This deliberative process privilege may therefore be invoked where a document is "(1) 'pre-decisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2)

7

'deliberative,' _i.e._, 'actually . . . related to the process by which policies are formulated.'"   La Raza, 411 F.3d at 356.

Even if a document meets the deliberative process privilege requirements, however, an agency must still disclose it where the agency has chosen "expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion."   Id. (quoting NLRB, 421 U.S. at 161).   In La Raza, for example, the Second Circuit found that a withheld memorandum was not exempt pursuant to Exemption 5 where "repeated references to [the document] by the Attorney General and his high-ranking advisors, the substance of their comments, and the way in which their comments were used -- that is, to assure third parties as to the legality of the actions the third parties were being urged to take" demonstrated that DOJ had expressly adopted the memorandum as part of its official policy.   Id. at 357.   However, the Second Circuit has also cautioned that "an agency does not adopt or incorporate by reference a pre-decisional memorandum where it only adopts the memorandum's conclusions."   Wood, 432 F.3d at 84.   Rather, the agency must adopt the document's analysis, as well.   See La Raza,

411 F.3d at 358 ("Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference.").

While La Raza held that there must be actual evidence, rather than mere speculation, to support a party's contention that an agency adopted or incorporated a document by reference, see 411 F.3d at 359, the Circuit Court declined to establish a "bright-line test."  Id. at 357 n.5 ("[C]ourts must examine all the relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred." (emphasis in original)); see also Bronx Defenders, 2005 WL 3462725, at *6 (declining to require public use of "magic language" by a decision-making entity admitting reliance on a document's reasoning and conclusions).  Still, neither "casual reference" to a privileged document, nor a simple "yes or no determination without providing any reasoning at all" will suffice to demonstrate that an agency has relied in reaching its conclusion upon a document's analysis.  La Raza, 411 F.3d at 359 (internal quotation marks omitted).

B.   ANALYSIS

The Brennan Center does not seriously dispute that the OLC Memoranda would, absent subsequent Government action, be subject to Exemption 5's deliberative privilege process. Indeed, as described below, the OLC Memoranda are on their face both pre-decisional and deliberative.   Rather, the Brennan Center argues that, by virtue of the manner in which the Government used and discussed openly the OLC Memoranda as the basis for the agencies' policies, the documents have lost their protected status.   The Court therefore must determine whether sufficient evidence exists to support a finding that both the conclusions and analyses of the OLC Memoranda were adopted or incorporated by reference by the Government.   Upon review of the evidence presented, including the nonredacted portions of the Withheld Documents that were previously submitted to the Court for in camera review, the Court concludes that the OLC Memoranda have lost their deliberative privilege process protections.   See Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement Agency, No. 10 Civ. 3488, 2011 WL 2693655, *8-9 (S.D.N.Y. July 11, 2011) (relying upon material reviewed in camera to determine whether FOIA exemptions apply); Azmy v. U.S. Dep't of

Defense, 562 F. Supp. 2d 590, 604-05 (S.D.N.Y. 2008) (same). The Court summarizes the relevant evidence below.

On February 12, 2004, the General Counsel of HHS wrote a letter to OLC requesting an opinion on the "constitutional issues" raised by the Leadership Act and TVPA. (Virga Decl. Ex. 7 at 2.) Five days later, on February 17, 2004, OLC provided HHS and USAID with the February Memo -- a one-page document entitled "Constitutionally Permissible Funding Restrictions for Sex-Trafficking and HIV/AIDS Prevention," which was described as "OLC's advice on HIV/AIDS and trafficking grant announcements." (Id. Ex. 8.)[3] On February 19, 2004, USAID sent OLC a "revised version" of a USAID Acquisition & Assistance Policy Directive ("AAPD"), and on February 26, 2004, USAID published its revised AAPD on the "Implementation of the [Leadership Act] -- Eligibility Limitation on the Use of Funds and Opposition to Prostitution and Sex Trafficking." (Id. Ex. 10.) In contrast to an AAPD issued earlier that year, this revised USAID AAPD applied the Pledge Requirement only to foreign

_____

[3] While certain portions of the February Memo were produced to the Brennan Center pursuant to the Court's direction, the bulk of that document remains redacted and non-public.

11

organizations and conduct occurring <u>outside</u> the United States.

HHS also responded to OLC's provision of the February Memo. Following several exchanges of "draft language for the HIV/AIDS and trafficking grant awards/agreements" in late February 2004 (<u>Id.</u> Exs. 11, 12), HHS issued a public grant notice on June 24, 2004, which, like USAID's February 24, 2004 AAPD, applied the Pledge Requirement to foreign organizations <u>only</u>.

On July 2, 2004, OLC sent the July 2 Memo to HHS. The document heading states that it is a Memorandum prepared for the General Counsel of HHS "Re: Federal Funds Restrictions in the [TVPRA] and the [Leadership Act]." The July 2 Memo's first sentence indicates that the memorandum addresses the constitutionality under the First Amendment of "certain statutory restrictions" found in the TVPRA and the Leadership Act.[4] (<u>Id.</u> Ex. 14.) The July 2 Memo's transmitting cover email, sent by an OLC attorney, characterizes the July 2 Memo as a "draft opinion," and a footnote within the July 2 Memo indicates that the July 2

---

[4] While certain portions of the July Memoranda were produced to the Brennan Center pursuant to the Court's direction, the bulk of those documents remains redacted and non-public.

Memo was being provided pursuant to a request from HHS made in February 2004.  (Id.)

Two weeks later, on July 16, 2004, USAID issued another AAPD which stated that the "US Government has determined that it is appropriate to apply the [Pledge Requirement] only to foreign organizations."  (Virga Decl. Ex. 16 at 3.)  On July 22, 2004, USAID internal guidance noted that OLC had opined, in a "draft opinion," that the Pledge Requirement could be applied only "to foreign non-governmental organizations and public international organizations because of the constitutional implications of applying it to U.S. organizations."  (Virga Decl. Ex. 17 at 35 n.10.)  On July 30, 2004, OLC sent the July 29 Memo -- a revised version of the July 2 Memo -- to USAID, which, on August 3, 2004, issued yet another AAPD stating "[t]he US Government has determined that it is appropriate to apply the [Pledge Requirement] only to foreign organizations, including public international organizations."  (Virga Decl. Ex. 20 at 3.)

In the Fall of 2004, DOJ changed its course.  On September 20, an OLC attorney sent a letter (the "September 20 Letter") to HHS noting that while OLC's "tentative advice" provided earlier that year had determined that the

Pledge Requirement could "under the Constitution, be applied only to foreign organizations acting overseas," that advice was being "withdrawn" following subsequent review and internal consultation within DOJ which concluded that "reasonable arguments" could be made to support the constitutionality of the Pledge Requirement's application to all grantees. (Id. Ex. 21.) Five months later, in February 2005, the Wall Street Journal reported that the Administration of President George W. Bush (the "Administration") had reversed its previous policy of applying the Pledge Requirement to foreign organizations only, and would thereafter apply it to U.S. domestic organizations, as well. The article noted that DOJ had initially advised the Administration that "it would be an unconstitutional violation of free speech to demand that American grant applicants support Mr. Bush's policy. But the Justice Department reversed itself [in Fall 2004]." (Id. Ex. 27.) The following month, during a congressional hearing on appropriations for foreign HIV/AIDS programs, Randall L. Tobias ("Tobias"), the U.S. Global AIDS coordinator and a USAID administrator, was questioned about USAID and DOJ's decision to apply the Pledge Requirement to U.S. domestic organizations. Tobias testified,

"[OLC] provided some tentative advice initially that those restrictions should be applied only to foreign organizations.   Sometime mid- to late-, I think, in September   of   2004,   they   withdrew   that   earlier tentative advice and advised that that provision was intended   by   the   Congress   to   apply   without   that limitation to both domestic organizations as well as foreign organizations.   And so I'm simply following the legislation and the advice to implement that."

(Id. Ex. 26 at 30.)

On May 3, 2005, HHS announced a new policy requiring all recipients of Leadership Act funds to abide by the Pledge Requirement, and, the following month, USAID issued a new AAPD which applied the Pledge Requirement to U.S. organizations, as well.   Finally, two years later, in July 2007, a DOJ attorney submitted a letter to U.S. Congressman Henry Waxman, then-Chairman of the House Committee on Government Oversight and Reform, recounting the history and evolution of the advice provided by DOJ to HHS and USAID regarding the applicability of the Pledge Requirement.   The letter discussed DOJ's February 2004 "tentative advice" that   the   Pledge   Requirement   could   constitutionally   be applied only to foreign organizations, as well as DOJ's subsequent   reversal   and   adoption   of   the   position,   in September   2004,   that   the   Pledge   Requirement   could   be applied to all grant applications, regardless of their provenance.   (Id. Ex. 25.)

15

"[OLC] provided some tentative advice initially that those restrictions should be applied only to foreign organizations.   Sometime mid- to late-, I think, in September   of   2004,   they   withdrew   that   earlier tentative advice and advised that that provision was intended   by   the   Congress   to   apply   without   that limitation to both domestic organizations as well as foreign organizations.   And so I'm simply following the legislation and the advice to implement that."

(Id. Ex. 26 at 30.)

On May 3, 2005, HHS announced a new policy requiring all recipients of Leadership Act funds to abide by the Pledge Requirement, and, the following month, USAID issued a new AAPD which applied the Pledge Requirement to U.S. organizations, as well.   Finally, two years later, in July 2007, a DOJ attorney submitted a letter to U.S. Congressman Henry Waxman, then-Chairman of the House Committee on Government Oversight and Reform, recounting the history and evolution of the advice provided by DOJ to HHS and USAID regarding the applicability of the Pledge Requirement.   The letter discussed DOJ's February 2004 "tentative advice" that the Pledge Requirement could constitutionally be applied only to foreign organizations, as well as DOJ's subsequent reversal and adoption of the position, in September 2004, that the Pledge Requirement could be applied to all grant applications, regardless of their provenance.   (Id. Ex. 25.)

15

Taken as a whole, this record reveals that, during 2004 and 2005, an internal conversation was occurring within the Government and the Administration regarding the constitutional permissibility of applying the Pledge Requirement to U.S. domestic organizations. Although the acknowledgement of adoption here may not be as explicit as in La Raza, whose facts showed "public and repeated reliance by the Attorney General on a particular OLC memo," the Court agrees with the Bronx Defenders court that, "it does not follow that anything less than that will fail to abrogate the [deliberative process] privilege." Bronx Defenders, 2005 WL 3462725, at *6.

It is clear from the various AAPDs, internal government letters and memoranda, public statements made by Government officials, and other materials reviewed by the Court in camera that, between February and September 2004, USAID and HHS adopted as agency policy both the conclusions provided in the February Memo that the Pledge Requirement should be applied to foreign organizations only, as well as OLC's reasoning and analysis that application of the Pledge Requirement to domestic organizations would violate the First Amendment. Indeed, from the public record alone, there can be little doubt that this was the case.

16

Significantly, the exchange of emails between OLC and HHS and USAID before and after the issuance of the February Memo; the publication of official policy statements by both HHS and OLC shortly after the February Memo was circulated; and the subsequent statements by DOJ and USAID officials concerning the reason for policy reversal in September 2004 all support the conclusion that HHS and USAID took their marching orders -- and the rationale for those orders -- directly from DOJ and the Administration.  The Government's suggestion that repeated public characterization of the February Memo as "tentative" and "draft" advice indicates that it was never incorporated into final agency policy ignores the explicit policies promulgated by HHS and USAID between February and September 2004, which, in accordance with the February Memo, applied the Pledge Requirement to foreign organizations only.  That OLC subsequently changed its position does not diminish the impact of its initial determination.  See Bronx Defenders, 2005 WL 3462625, at *5 ("The fact that the policy may have changed later is not a relevant consideration.").

Further, the record also reveals that the conclusions and analysis contained in the July Memoranda, which the Court has examined in camera, were the basis for the

17

Government's determination to alter its policy and apply the Pledge Requirement to U.S.-based organizations. This policy change, as well as a reference to the "reasonable arguments" that could support its constitutionality, was first discussed publicly in the September 20 Letter from OLC to HHS.   (Virga Decl. Ex. 21).   It was subsequently repeated in Tobias's testimony before Congress in March 2005, and ratified by HHS and USAID through those agencies' official policy announcements in May and June 2005.   These public statements lead to the inescapable finding that, at least with respect to the July Memoranda's treatment of the Pledge Requirement, although the documents were never mentioned specifically by name, the Government incorporated the July Memoranda by reference.

Finally, the Government's contention that the OLC Memoranda are protected from disclosure by the attorney-client privilege must fail.   As the La Raza Court held, because the Government, in light of all the facts and circumstances set forth above, incorporated the OLC Memoranda into HHS's and USAID's official policy, the attorney-client privilege cannot be invoked to bar the OLC Memoranda's disclosure.   See La Raza, 411 F.3d at 360-61; Bronx Defenders, 2005 WL 3462725, at *7 ("The Government

will not be allowed to make public use of a document when
it serves its own ends but claim the attorney-client
privilege when it does not." (quoting La Raza, 411 F.3d at
361 (internal quotation marks and alterations omitted)).

### III.  ORDER

For the reasons stated above, it is hereby

ORDERED that the motion (Docket No. 21) of plaintiff
Brennan Center for Justice at New York University School of
Law ("Brennan Center") is GRANTED; and it is further

ORDERED that cross-motion (Docket No. 23) of United
States Department of Justice, United States Department of
Health and Human Services, and United States Agency for
International Development (collectively, the "Government")
is DENIED; and it is further

ORDERED that the Government is directed to produce to
the Brennan Center versions of Document Nos. 3, 13 and 15
listed in the Government's Vaughn Index dated January 15,
2010, that disclose fully any and all material referring,
explicitly or implicitly, in whole or in part, to the
"organization restrictions" or "organization-wide
restrictions"; and it is finally

19

    **ORDERED** that the Brennan Center is directed to inform the Court within fourteen days of its receipt of the above-referenced documents as to its contemplation with regard to further prosecution of this action.

**SO ORDERED.**

Dated:    New York, New York
              29 August 2011

                          VICTOR MARRERO
                            U.S.D.J.

20